1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  MICROSOFT CORPORATION, a          Case No. 14-cv-9697 R (PLAx)
    Washington corporation,
12                                     UNCONTROVERTED FINDINGS OF
                          Plaintiff,   FACTS AND CONCLUSIONS OF
13                                     LAW AND ORDER GRANTING
              v.                       PLAINTIFF MICROSOFT
14                                     CORPORATION'S MOTION FOR
                                       SUMMARY JUDGMENT AGAINST
15  BUY MORE, INC., a California       DEFENDANTS BUY MORE, INC.;
    corporation; AVERAPC, a business of MOJDEH ALAM A/K/A MOJI ALAM;
16  unknown classification; MOJDEH     LAPTOP OUTLET CENTER INC.,
    ALAM, an individual, a/k/a MOJI    MARYAM SAJJAD; VEHID
17  ALAM and d/b/a AVERAPC;            ABDULLAHI A/K/A VICTOR
                                       ALLENI AND ABDULLAHI VEHID;
18  LAPTOP OUTLET CENTER INC., a       AND SHAHRAM SHIRAZI A/K/A
    California corporation; SIDE MICRO, SHAWN SHIRAZ
19  INC., a business of unknown
    classification; MARYAM SAJJAD, an
20  individual, d/b/a SIDE MICRO, INC.;
21  MISSION SOFTWARES, a business of
    unknown classification a/k/a MISSION
22  SOFTS; MOHSEN RAVANBAKHSH,
    an individual a/k/a MOHSEN RAVAN
23  and d/b/a MISSION SOFTWARES
24  a/k/a MISSION SOFTS; CALISTECH,
    a California corporation; VEHID
25  ABDULLAHI, an individual a/k/a
26  VICTOR ALLENI; SHAHRAM
    SHIRAZI, an individual, a/k/a
27

28

SHAWN SHIRAZ; and DOES 1
through 10,

Defendants.

Plaintiff Microsoft Corporation's Motion for Summary Judgment came on for hearing on September 8, 2015, before the Honorable Manuel L. Real, presiding in Department 8 of the United States District Court for the Central District of California.  All appearances are as reflected in the record.

The Court, having considered all papers filed in support of and in opposition to the Motion, all admissible evidence filed in support of and in opposition to the Motion, and the argument of counsel, IT IS HEREBY ORDERED that the Motion is Granted and that Judgment be entered against Defendants Buy More, Inc., Mojdeh Alam a/k/a Moji Alam, Laptop Outlet Center, Inc., Maryam Sajjad, Vehid Abdullahi a/k/a Victor Alleni a/k/a Abdullahi Vehid, and Shahram Shirazi a/k/a Shawn Shiraz's (collectively, "Defendants") as set forth below.

The Court's ruling granting Plaintiff's Motion for Summary Judgment is based on the uncontroverted findings of facts and conclusions of law set forth below, and as stated on the record at the September 8, 2015 hearing on the Motion for Summary Judgment.

## UNCONTROVERTED FINDINGS OF FACT

1.      Plaintiff develops, advertises, distributes and licenses computer software programs.

2.      Microsoft software is distributed in all fifty states of the United States of America and throughout the world.

3.      Microsoft Certificates of Authenticity and Certificate of Authenticity labels are currency-like documents or labels that Plaintiff includes in or with its software packages to assure end users that they have purchased genuine Microsoft software.

4.     A Microsoft product key is a 25-character alphanumeric code arranged in five groups of five characters each that must be entered at the time certain Microsoft software is installed on a computer ("Product Key").  Product Keys are generated by Plaintiff and a Product Key is needed to activate or unlock the associated software program to enable its use.  Because Plaintiff's copyrighted software is capable of being installed on a potentially unlimited number of computers, Plaintiff relies on the Product Keys, and in some cases activation features within its software, to restrict installation and identify abuse of its software.

5.     Plaintiff's copyrights in and to its Windows 7, Office 2007, Office Excel 2007, Office Outlook 2007, and Microsoft Office Word 2007 software programs were registered with the United States Copyright Office in compliance with the Copyright Revision Act of 1976 (17 U.S.C. § 101 et seq.) and Copyright Office regulations.  The copyrights are assigned the following Registration Numbers:

        a.     TX 7-009-361 ("Windows 7");

        b.     TX 6-504-552 ("Microsoft Office 2007");

        c.     TX 6-524-399 ("Microsoft Office Excel 2007");

        d.     TX 6-860-358 ("Microsoft Office Outlook 2007"); and

        e.     TX 6-524-398 ("Microsoft Office Word 2007").

6.     Plaintiff has been and is the sole owner of all right, title and interest in, and to, the copyright and Certificates of Registration noted above.

7.     Plaintiff is the owner of valid, federally-registered trademarks and/or service marks in and to the following:

        a.     "MICROSOFT," Trademark and Service Mark Registration No. 1,200,236;

        b.     WINDOWS, Trademark Registration No. 1,872,264;

        c.     COLORED FLAG DESIGN, Trademark Registration No. 2,744,843;

1         d.      COLORED FLAG START BUTTON, Trademark Registration

2  No. 3,361,017;

3         e.      "MICROSOFT OFFICE," Trademark Registration No.

4  3,625,391;

5         f.      COLOR FOUR SQUARE LOGO, Trademark Registration No.

6  2,999,281;

7         g.      OFFICE 2010 DESIGN, Trademark Registration No. 4,029,299;

8         h.      "OUTLOOK," Trademark Registration No. 2,188,125; and

9         i.      "EXCEL,"  Trademark Registration No. 2,942,050.

10      8.    Plaintiff has been and is the sole owner of all right, title and interest in,

11  and to, the trademarks, service marks, and registrations noted above.

12      9.    Plaintiff's Registered Refurbisher Program ("RRP") is a global

13  program for refurbishers of computer systems who want to provide consumers with

14  professionally refurbished computer systems installed with genuine and properly

15  licensed copies of Microsoft software.

16      10.    After entering into an RRP Agreement, which restricts the use and

17  distribution of Microsoft software components obtained through the RRP, members

18  of the RRP, also referred to as Registered Refurbishers ("RRs"), have access to

19  discounted licenses for certain types of Microsoft software which allow the RRs to

20  install and distribute RRP software and components on qualifying refurbished

21  computer systems.

22      11.    Defendants are interconnected through various relationships, both

23  business and personal, and have been documented as dealing in counterfeit and

24  illicit Microsoft software and components.

25      12.    Defendants operated a number of websites and entities that sold

26  counterfeit and illicit Microsoft software components to the public, including

27  Mission Softs (www.missionsofts.com), Side Micro (www.sidemicro.com), Laptop

28  Outlet and Capital PC (www.capitalpc.net).

13.     Defendants purchased counterfeit Microsoft software discs from unauthorized sources.  Defendants then paired the counterfeit Microsoft software discs with illicit and adulterated Microsoft RRP Certificate of Authenticity labels ("COAs" or "COA labels") and sold the counterfeit Microsoft software discs with the illicit COAs to unsuspecting customers.

14.     The illicit and adulterated COA labels had identifying information removed, such as serial numbers and text stating that the COAs should be distributed with refurbished computer systems.  Product Keys which were obtained by Defendants through the RRP website using their RRP accounts had been improperly added to the COA labels.  A genuine RRP COA label does not have a Product Key printed on the label.

15.     Defendants also pair counterfeit Microsoft software discs with counterfeit COA labels, which had incorrect artwork and missing security features.

16.     Plaintiff does not authorize the distribution of COA labels without the software programs the labels were intended to authenticate.  RRP COA labels should only be distributed affixed to a refurbished computer system loaded with a licensed copy of the corresponding RRP software.  Defendants instead paired adulterated RRP COAs or counterfeit COA labels with counterfeit Microsoft software discs or with software the COAs were not intended to authenticate.  Defendants then tried to pass the software components off as genuine Microsoft software to their customers.

17.     Defendant Buy More, Inc. ("Buy More") is a California corporation distributing purported Microsoft software and related components such as COAs and Product Keys.

18.     Defendant Vehid Abdullahi is also known as Victor Alleni and Abdullahi Vehid ("Abdullahi").  According to Abdullahi's PayPal account records, he uses multiple names and social security numbers.

19.     Abdullahi owns, operates, and/or otherwise controls Buy More.

20.     Buy More and Abdullahi own and operate a number of websites, including www.sidemicro.com and www.capitalpc.net, through which Defendants sold counterfeit and illicit Microsoft software components.

21.     Abdullahi also does business as AveraPC.

22.     Buy More joined the RRP in October 2010 and its RRP agreements were executed by "Victor Alleni."

23.     Defendant Laptop Outlet Center, Inc. ("Laptop Outlet") is a California corporation.

24.     Abdullahi also owns, operates, and/or otherwise controls Laptop Outlet.

25.     Defendant Shahram Shirazi also known as Shawn Shiraz ("Shirazi") is an officer of Laptop Outlet.  Laptop Outlet joined the RRP in January 2013 and its RRP Agreements were entered into by Shirazi.

26.     Alam owns and does business as many companies, including, but not limited to AveraPC, Capital PC (www.capitalpc.net), Mission Softs (www.missionsofts.com) and Side Micro (www.sidemicro.com) (collectively "Alam").

27.     AveraPC joined the RRP in October 2011 and AveraPC's RRP agreements were entered into by "Moji Alam."

28.     Alam owns or rents the mail boxes that Mission Softs and Side Micro use to send and receive mail.

29.     Defendant Maryam Sajjad ("Sajjad") also does business as Side Micro. Side Micro joined the RRP in March 2014.  As noted above, the Side Micro website is owned and paid for by Buy More/Abdullahi and the mail box for Side Micro is rented by Alam.  The RRP Agreement was executed by Maryam Sajjad and she was identified by Side Micro as the owner of Side Micro and the administrative contact.

30.     Defendants regularly made purchases on behalf of each other through the RRP.  For example, RRP Product Keys obtained by one Defendant through the RRP website were wrongfully added to illicit and adulterated RRP COAs distributed by other Defendants.

31.     As an example of the coordination of Defendants' operation, on or about January 29, 2013, a customer of Defendants purchased one purported unit of Windows 7 Professional software for $69.00 through the Mission Softs website. The customer received a counterfeit Windows 7 reinstallation software disc and an RRP COA that was adulterated to remove text showing that the RRP COA was intended to be distributed with a refurbished computer ("For use on a refurbished PC" was removed from the COA).  Also removed was text that would identify the purchaser of the associated RRP license.  Added to the RRP COA was an RRP Product Key obtained through the RRP website by Buy More/Abdullahi on February 5, 2013.  Buy More/Abdullahi did not pay for the associated license and reported to Plaintiff that the software would be installed on a refurbished computer being distributed to "Moe Raven."  The money from the sale of the counterfeit software and illicit COA went directly into Alam's PayPal account.

32.     Plaintiff's expert Sue Ventura analyzed software and components Defendants distributed to their customers (including Plaintiff's investigators) and determined the following:

        a.     Defendants distributed counterfeit Microsoft Windows 7 discs paired with illicit and adulterated COAs to fifteen customers.

        b.     Defendants distributed thirty-five (35) adulterated Microsoft Windows 7 discs paired with illicit and adulterated and illicit COAs to a single customer.

        c.     Defendants distributed one (1) tampered with Microsoft Windows 7 disc paired with five (5) illicit and adulterated Windows 7 COAs to an investigator.

d.    Defendants distributed a total of five (5) counterfeit Windows 7 discs paired with five (5) counterfeit Windows 7 COAs to four different customers.

e.    Defendants distributed four (4) counterfeit Microsoft Office Basic 2007 OEM Pre-Installation discs and one (1) adulterated Windows 7 COA to an investigator.

f.    Defendants distributed one (1) adulterated and tampered with Windows 7 disc and two (2) illicit and adulterated COA labels to an investigator.

g.    Defendants distributed one (1) illicit and adulterated Windows 7 disc and one (1) counterfeit COA to a customer.

h.    Defendants distributed one (1) adulterated and illicit COA to a customer.

33.    Defendants were on notice of their infringement.  Abdullahi and Buy More received written notice and a follow up call from Plaintiff; Laptop Outlet, Abdullahi and Shirazi received written notice and a follow-up call from Plaintiff; and Alam and Sajjad received multiple notices from Plaintiff.

34.    All of the Defendants were informed that they either may have or were distributing counterfeit, infringing and illicit Microsoft software.  Plaintiff's representatives spoke with Defendants, or those acting in concert with them, on at least two occasions and provided Defendants with information on authorized distributors of Microsoft software, who are assured sources of genuine Microsoft software.  Defendants also received notice that it is against the law to distribute COAs without the intended software.

35.    Defendants continued to distribute counterfeit and infringing Microsoft software and components after receipt of Plaintiff's letters and follow up calls.

36.    Moreover, Defendants' participation in the RRP put them on notice of the proper manner in which to distribute RRP components, including the restriction

1   that RRP components cannot be sold without the associated licensed RRP software
2   installed onto refurbished computer systems.

3          37.    Defendants did not produce any sales records.  In response to
4   Plaintiff's Requests for Production, Defendants stated they had no documents
5   relating to their distribution of any Microsoft items.

6          38.    Defendants either did not maintain records or failed to disclose them to
7   hide the extent of their infringement.

8          39.    Plaintiff maintains a list of authorized distributors on its website and
9   through a variety of methods.  Plaintiff directs system builders and resellers to these
10   authorized distributors as assured sources of genuine Microsoft software.

11          40.    Defendants' own records show they bought over 5,000 Microsoft
12   software reinstallation discs from a distributor not on the list of authorized
13   Microsoft distributors.  Defendants also purchased purported Microsoft items from
14   entities located in China who were not on the list of authorized Microsoft
15   distributors.

16          41.    Plaintiff's RRP records for Defendants show over 80,000 RRP Product
17   Keys obtained by Defendants.

18          42.    Defendants operated a large scale counterfeiting operation.  The
19   distributions to investigators and the customers who sent counterfeit and illicit
20   software components to Microsoft for analysis were indicative of Defendants'
21   regular business practices.

22          43.    Documents subpoenaed from PayPal show that the payments from
23   customers and investigators who obtained counterfeit and illicit components from
24   Mission Softs and Capital PC went directly into Alam's account.

25          44.    In total, over $4,000,000 in payments were deposited into Alam's
26   PayPal account alone from sales through www.missionsofts.com and
27   www.captialpc.net in 2013 and 2014.

28

45.     Documents received from JP Morgan Chase pursuant to a third party subpoena show millions of dollars flowing through a single account associated with Defendants and their businesses.  That JP Morgan Chase account belonged to Vehid Abdullahi (under the name Vehid Abdullahi dba AveraPCcom) and Defendant Alam also had access to the account (the "Abdullahi/AveraPC JP Morgan Chase account").  Account records show hundreds of thousands of dollars in purported Microsoft software components ordered from unauthorized distributors located in China.  The purchases include "Dell Win Seven," "Dell Windows," "Key Windows," "COA key," "400 key" and "Windows COA."

46.     The Abdullahi/AveraPC JP Morgan Chase account also shows millions of dollars being transferred from Alam's PayPal account, the account into which payments from Defendants' customers (including Plaintiff's investigators) for Microsoft software and COAs later determined to be counterfeit and illicit were deposited.

47.     Transfers from Alam's PayPal account to the Abdullahi/AveraPC JP Morgan Chase account total over $4,000,000.

48.     The documentary evidence provided by JP Morgan Chase establishes the interconnectedness of Defendants as well as the fact that they were controlling or involved with entities that sold counterfeit and infringing Microsoft software.

**CONCLUSIONS OF LAW**

1.     Summary judgement is appropriate where there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Once the moving party meets its initial burden of showing there are no genuine issues of material fact, the opposing party has the burden of producing competent evidence and cannot rely on mere allegations or denials in the pleadings.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 n.11 (1986).  As the party with the burden of persuasion at trial, the plaintiff must establish beyond controversy every essential

1    element of its claim.  <u>S. Cal. Gas Co. v. City of Santa Ana</u>, 336 F.3d 885, 888 (9th

2    Cir. 2003).  Where the record taken as a whole could not lead a rational trier of fact

3    to find for the nonmoving party, there is no genuine issue for trial.  <u>Matsushita</u>

4    <u>Elec.</u>, 475 U.S. at 587.

5          2.     To establish copyright infringement, a plaintiff must prove (a) that it

6    owns valid copyrights in the works at issue; and (b) that the defendant encroached

7    upon the plaintiff's exclusive rights as a copyright holder.  <u>See</u> 17 U.S.C. § 501;

8    <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.</u>, 499 U.S. 340, 361 (1991); <u>Range</u>

9    <u>Road Music, Inc. v. E. Coast Foods, Inc.</u>, 668 F.3d 1148, 1153 (9th Cir. 2012).  A

10    defendant's knowledge or intent is irrelevant to their liability for copyright

11    infringement.  <u>See</u> 17 U.S.C. § 501(a).  A copyright registration certificate is prima

12    facie evidence of ownership of a valid copyright.  17 U.S.C. § 410(c).

13          3.     The Anti-Counterfeiting Amendments Act of 2004 prohibits the sale of

14    illicit or counterfeit labels, documentations, or packaging.  18 U.S.C. § 2318.

15    Under the Act, it is illegal to knowingly traffic in a counterfeit label or illicit label

16    affixed to, enclosing, or accompanying, or designed to be affixed to, enclose, or

17    accompany a copy of a computer program.  18 U.S.C. § 2318(a)(1)(A).  To

18    establish a claim for violation of the Act, a plaintiff need show (1) ownership of

19    valid copyrights in the works at issue; (2) the COAs at issue are illicit or

20    counterfeit; (3) the defendant was aware of the facts that constitute the offense; and

21    (4) the defendant trafficked in the COAs at issue.  18 U.S.C. § 2318; <u>Microsoft</u>

22    <u>Corp. v. AGA Solutions, Inc.</u>, 2009 WL 1033784, at *3 (E.D.N.Y. April 17, 2009);

23    <u>Microsoft Corp. v. Image & Bus. Solutions</u>, 2007 WL 2874430, at *8 (C.D. Cal.

24    May 4, 2007).  An illicit label is "a genuine certificate, licensing document,

25    registration card, or similar labeling component . . . that is used by the copyright

26    owner to verify that . . . a copy of a computer program . . . is not counterfeit or

27    infringing of any copyright" and without the copyright owner's authorization,

28    "distributed or intended for distribution not in connection with the copy" of the

1  computer program to which the label was intended to be affixed by the copyright

2  owner.  18 U.S.C. § 2318(b)(4).

3      4.    The Lanham Act prohibits the use in commerce of any reproduction,

4  counterfeit, copy, or colorable imitation of a registered mark in connection with the

5  sale, offering for sale, distribution, or advertising of any goods or services when

6  such a use is likely to cause confusion or to cause mistake.  15 U.S.C. § 1114.  To

7  prevail on a trademark infringement claim, a plaintiff must prove that (1) it has a

8  protectable ownership interest in the mark and (2) the defendant's use of the mark

9  is likely to cause customer confusion.  Dep't of Parks & Recreation v. Bazaar del

10 Mundo Inc., 448 F.3d 1118, 1124 (9th Cir. 2006).

11     5.    The Ninth Circuit applies the eight-factor Sleekcraft test to determine

12 whether a likelihood of confusion has been shown.  AMF v. Sleekcraft Boats, 599

13 F.2d 341, 348-49 (9th Cir. 1979).  The factors are:  (1) the strength of plaintiff's

14 mark; (2) the relatedness or proximity of the goods; (3) the similarity of the marks;

15 (4) evidence of actual confusion; (5) the degree to which the parties' marketing

16 channels converge; (6) the type of goods and degree of care purchasers are likely to

17 exercise in selecting the goods; (7) evidence of defendant's intent; and (8) the

18 likelihood that parties will expand their product lines.  Id.  It is well established that

19 this multifactor approach must be applied in a flexible fashion.  Rearden LLC, v.

20 Rearden Commerce, Inc., 683 F.3d 1190, 1209 (9th Cir. 2012).  Thus, the factors

21 are not a rote checklist but are instead intended to guide the Court in assessing the

22 basic question of likelihood of confusion.  E. & J. Gallo Winery v. Gallo Cattle Co.,

23 967 F.2d 1280, 1290-91 (9th Cir. 1992).  Given the open-ended nature of this multi-

24 prong inquiry, it is not surprising that summary judgement on likelihood of

25 confusion grounds is generally disfavored.  Rearden, 683 F.3d at 1210.  The Ninth

26 Circuit has cautioned that district courts should grant summary judgement motions

27 regarding the likelihood of confusion sparingly as careful assessment of the

28 pertinent factors that go into determining likelihood of confusion usually requires a

1    full record.  Thane Int'l, Inc., v. Trek Bicycle Corp., 305 F.3d 894, 901-02 (9th Cir.

2    2002) (superseded by statute on other grounds).

3         6.     The test for false designation under the Lanham Act as well as the

4    common law unfair competition claims is whether there is a likelihood of

5    confusion.  Walter v. Mattel, Inc., 210 F.3d 1108, 1111 (9th Cir. 2000).  A claim

6    for state unfair competition is evaluated under the same standard as trademark

7    infringement.  M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1089-90 (9th

8    Cir. 2005); Cleary v. News Corp., 30 F.3d 1255, 1262-63 (9th Cir. 1994).

9         7.     Plaintiff has provided registration certificates for the copyrights at

10   issue, and Defendants do not dispute Plaintiff's ownership or the validity of those

11   copyrights.  Ownership and validity of the copyrights is therefore established.

12        8.     Plaintiff's proffered evidence establishes that Defendants and their

13   business are interconnected through various relationships, both business and

14   personal, and that those businesses and individuals have all dealt in counterfeit

15   copies of Plaintiff's copyrighted works.

16        9.     Defendants have failed to rebut the proffered evidence of their

17   infringement.  Defendants' mere conclusory statements that they did not commit

18   copyright infringement are insufficient to create a general issue of material fact.

19   And, importantly, Defendants do not dispute that they distributed the illicit and

20   counterfeit goods.  See 17 U.S.C. § 501(a).

21        10.    Knowingly trafficking in illicit and counterfeit COAs violates the

22   Anti-Counterfeiting Amendments Act of 2004.  18 U.S.C. § 2318(a)(1)(A).

23   Plaintiff has proffered unrebutted evidence that the COAs distributed by

24   Defendants were counterfeit and/or illicit.  The counterfeit and illicit nature of the

25   COAs was confirmed by Plaintiff's expert, Sue Ventura.  Defendants were aware of

26   the facts constituting the offense as demonstrated by the adulteration and

27   distribution of those counterfeit and illicit COAs.  Finally, Defendants trafficked in

28

1   the counterfeit and/or illicit COAs by offering them for sale and actually selling

2   them to customers along with the counterfeit and infringing software.

3         11.    Plaintiff provided copies of its trademark registrations and Defendants

4   do not dispute Plaintiff's ownership or the validity of those trademarks or

5   registrations.  Ownership and validity of the trademarks is therefore established.

6         12.    A brief review of the Sleekcraft factors shows that the factors favor a

7   finding of likelihood of confusion:  (1) Plaintiff's marks are strong; (2) the goods

8   are identical because Defendants' goods are counterfeit copies of Plaintiff's

9   software; (3) the marks are identical as Defendants are selling counterfeit copies of

10  Microsoft software and COAs; (4) there is actual confusion in that customers

11  bought software from Defendants believing it to be genuine; (5) Defendants

12  intended to deceive customers as they offered their products as genuine when they

13  were not and in reviewing their litigation tactics they have sought to obstruct

14  discovery of information linking them to unauthorized dealers of Plaintiff's

15  software; and (6) the likelihood that the parties will expand their product lines is

16  neutral, if not supporting likelihood of confusion, because the goods at issue are

17  counterfeit copies of the Plaintiff's software.  Indeed the analysis of the Sleekcraft

18  factors here is not mandatory "because counterfeit marks are inherently confusing."

19  Phillip Morris USA Inc. v. Shalabi, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004).

20        13.    An identical analysis applies to Plaintiff's false designation of origin

21  and California common law unfair competition claim.  Because Plaintiff is entitled

22  to summary judgement as to its claims for federal trademark infringement, Plaintiff

23  is also entitled to summary judgement as to Plaintiff's false designation of origin

24  and common law unfair competition claims.

25        14.    Defendant Abdullahi is directly, contributorily and/or vicariously

26  liable for the infringing conduct.  He is personally liable under the federal copyright

27  and trademark laws for infringement of Plaintiff's intellectual property rights, and

28

for the distribution of counterfeit and/or illicit COA labels.  See 17 U.S.C. § 101 et seq.; 15 U.S.C. § 1051 et seq.; 18 U.S.C. § 2318.

15. Defendant Alam is directly, contributorily and/or vicariously liable for the infringing conduct.  She is personally liable under the federal copyright and trademark laws for infringement of Plaintiff's intellectual property rights, and for the distribution of counterfeit and/or illicit COA labels.  See 17 U.S.C. § 101 et seq.; 15 U.S.C. § 1051 et seq.; 18 U.S.C. § 2318.

16. Defendant Sajjad is directly, contributorily and/or vicariously liable for the infringing conduct.  She is personally liable under the federal copyright and trademark laws for infringement of Plaintiff's intellectual property rights, and for the distribution of counterfeit and/or illicit COA labels.  See 17 U.S.C. § 101 et seq.; 15 U.S.C. § 1051 et seq.; 18 U.S.C. § 2318.

17. Defendant Shirazi is directly, contributorily and/or vicariously liable for the infringing conduct.  He is personally liable under the federal copyright and trademark laws for infringement of Plaintiff's intellectual property rights, and for the distribution of counterfeit and/or illicit COA labels.  See 17 U.S.C. § 101 et seq.; 15 U.S.C. § 1051 et seq.; 18 U.S.C. § 2318.

18. Plaintiff has elected to receive statutory damages.  Defendants made no objection to the amounts sought.  Statutory damages are especially appropriate in this case because the information needed to establish actual damages is within Defendants' control and was not fully disclosed.  See Columbia Pictures Television, Inc. v. Krypton Bd. of Birmingham, Inc., 259 F.3d 1186, 1195 (9th Cir. 2001).

19. The Court hereby awards Plaintiff a total of $1,950,000 in statutory damages comprised of $30,000 each for the five copyrights infringed for a total of $150,000 in damages under the Copyright Act and $200,000 each for the nine counterfeit trademarks for a total of $1,800,000 in damages under the Lanham Act.

Defendants are jointly and severally liable for the $1,950,000 awarded in statutory damages.

20. Plaintiff is entitled to a permanent injunction in the form entered concurrently with this order permanently enjoining Defendants from, among other things, infringing Plaintiff's copyrights and trademarks.

21. In determining whether to enter a permanent injunction courts examine whether: (1) the plaintiff has suffered irreparable injury; (2) there is an adequate remedy at law for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) it is in the public's interest to issue the injunction. eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006); Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1137-38 (9th Cir. 2006).

22. Here, Defendants offered and sold their products as genuine Microsoft software when, in fact, they were providing counterfeit and illicit Microsoft software and components. Plaintiff cannot repair the harm that Defendants have caused because Defendants chose not to disclose any information regarding their distributions of purported Microsoft software. Plaintiff has suffered damage to its goodwill as customers who believed they were buying genuine Microsoft software received counterfeit software instead. Such injury constitutes irreparable harm that cannot be compensated by monetary damages. See Sennheiser Elec. Corp. v. Eichler, 2013 WL 3811775, at *10 (C.D. Cal. July 19, 2013). (finding that "the injury caused by the presence of infringing products in the market—such as lost profits and customers, as well as damage to goodwill and business reputation—will often constitute irreparable injury" for purposes of a permanent injunction). The balance of hardships weighs in favor of granting an injunction as the requested injunction would not prohibit Defendants from legally distributing genuine Microsoft software. Defendants would only be prohibited from infringing Plaintiff's copyrights and trademarks in the future. See Polo Fashions, Inc. v. Dick

Bruhn, Inc., 793 F.2d 1132, 1135-36 (9th Cir. 1986) (stating that "[i]f the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [the plaintiff] substantial protection of its trademark"); Wecosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012) ("the balance of hardships favors Plaintiff because without an injunction, Plaintiff will lose profits and goodwill, while an injunction will only proscribe Defendants' infringing activities.").

23.    Finally, the public interest would be served by granting an injunction, as it would prevent consumers from unknowingly receiving counterfeit and illicit Microsoft software and components from the Defendants.  Id. (finding that an injunction is in the public interest because the public has an interest in avoiding confusion between two companies' products).

24.    Any finding of fact that is deemed a conclusion of law is incorporated herein as such.

## **ORDER**

1.    For all the foregoing reasons the Court GRANTS Plaintiff's Motion for Summary Judgment.

2.    Defendants Buy More, Inc.; Mojdeh Alam a/k/a Moji Alam; Laptop Outlet Center, Inc.; Maryam Sajjad; Vehid Abdullahi a/k/a Victor Alleni a/k/a Abdullahi Vehid; and Shahram Shirazi a/k/a Shawn Shiraz are liable to Plaintiff on its claims for trademark infringement; copyright infringement; federal false designation or origin, false description, and false representation; violations of the Anti-Counterfeiting Amendments Act of 2004 and common law unfair competition.

3.    Defendants Buy More, Inc.; Mojdeh Alam a/k/a Moji Alam; Laptop Outlet Center, Inc.; Maryam Sajjad; Vehid Abdullahi a/k/a Victor Alleni a/k/a Abdullahi Vehid; and Shahram Shirazi a/k/a Shawn Shiraz are jointly and severally liable to Plaintiff for statutory damages in the amount of $1,950,000.

4.      Defendants Buy More, Inc.; Mojdeh Alam a/k/a Moji Alam; Laptop Outlet Center, Inc.; Maryam Sajjad; Vehid Abdullahi a/k/a Victor Alleni a/k/a Abdullahi Vehid; and Shahram Shirazi a/k/a Shawn Shiraz are permanently enjoined from, among other things, infringing Plaintiff's copyrights and trademarks as set forth in the Permanent Injunction concurrently filed with this Order.

5.      Judgment consistent with this order will entered against Defendants in the form and on the terms contained in the separate Judgment filed concurrently herewith.

IT IS SO ORDERED.

DATED:  September 24, 2015

By: _____
HONORABLE MANUEL L. REAL
UNITED STATES DISTRICT JUDGE

1    Approved as to form and content.

2    **PERKINS COIE** LLP

3

4    By:/s/ Katherine M. Dugdale
          Katherine M. Dugdale

5    Attorneys for Plaintiff Microsoft
6    Corporation

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28