Katherine M. Dugdale, Bar No. 168014
KDugdale@perkinscoie.com
Audra M. Mori, Bar No. 162850
AMori@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA  90067-1721
Telephone:  310.788.9900
Facsimile:  310.788.3399

Attorneys for Plaintiff
MICROSOFT CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MICROSOFT CORPORATION, a
Washington corporation,

                              Plaintiff,

              v.

BUY MORE, INC., a California
corporation; AVERAPC, a business of
unknown classification; MOJDEH
ALAM, an individual, a/k/a MOJI
ALAM and d/b/a AVERAPC;
LAPTOP OUTLET CENTER INC., a
California corporation; SIDE MICRO,
INC., a business of unknown
classification; MARYAM SAJJAD, an
individual, d/b/a SIDE MICRO, INC.;
MISSION SOFTWARES, a business of
unknown classification a/k/a MISSION
SOFTS; MOHSEN RAVANBAKHSH,
an individual a/k/a MOHSEN RAVAN
and d/b/a MISSION SOFTWARES
a/k/a MISSION SOFTS; CALISTECH,
a California corporation; VEHID
ABDULLAHI, an individual a/k/a
VICTOR ALLENI; SHAHRAM
SHIRAZI, an individual, a/k/a

Case No. 14-cv-9697 R (PLAx)

PLAINTIFF MICROSOFT
CORPORATION'S MEMORANDUM
OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION FOR
ENTRY OF DEFAULT JUDGMENT
AND PERMANENT INJUNCTION
AGAINST DEFENDANT MOHSEN
RAVANBAKHSH A/K/A MOHSEN
RAVAN

DATE:  November 16, 2015
TIME:  10:00 a.m.
COURTROOM:  8

The Honorable Manuel L. Real

*[Filed concurrently with Notice of
Motion; [Proposed] Judgment;
[Proposed] Permanent Injunction; and
Declarations of Katherine M. Dugdale,
Sharon Grisham, Cindy Yard, Michael
Fuller and Katie Hasbrouck]*

1  SHAWN SHIRAZ; and DOES 1
2  through 10,
3              Defendants.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................... 1

II.     BACKGROUND ........................................................................................ 1

III.    ARGUMENT ............................................................................................. 4

     A.     Ravanbakhsh Is Liable on All Claims ............................................ 5

          1.     Copyright and Trademark Infringement ............................ 5

          2.     Violations of the Anti-Counterfeiting Amendments
              Act of 2004 ......................................................................... 6

          3.     False Designation of Origin ................................................ 6

          4.     Common Law Unfair Competition ...................................... 6

          5.     Conversion ......................................................................... 7

          6.     Unjust Enrichment ............................................................. 7

     B.     The Eitel Factors Strongly Favor Entry of Default Judgment .............. 8

     C.     Microsoft Is Entitled to Statutory Damages ................................... 9

          1.     The Copyright and Lanham Acts Provide for Statutory Damages
              .............................................................................................. 9

          2.     Microsoft Seeks an Amount of Statutory Damages Within the
              Range Available for Non-Willful Infringement ...................... 11

          3.     The Anti-Counterfeiting Amendments Act of 2004 Provides for
              Statutory Damages ............................................................. 13

     D.     This Court Should Permanently Enjoin Ravanbakhsh ...................... 13

     E.     Microsoft Is Entitled to an Award of Attorneys' Fees and Costs ........ 15

IV.     CONCLUSION ........................................................................................ 17

# TABLE OF AUTHORITIES

**Page**

CASES

Arista Records, Inc. v. Beker Enters., Inc.,
   298 F. Supp. 2d 1310 (S.D. Fla. 2003) .......................................... 11, 12

AT&T Corp. v. Vision One Security Sys.,
   1995 WL 476251 (S.D. Cal. July 27, 1995) .................................... 15

Berger v. Home Depot USA, Inc.,
   741 F.3d 1061 (9th Cir. 2014) ......................................................... 7

Cable/Home Commc'n Corp. v. Network Prods., Inc.,
   902 F.2d 829 (11th Cir. 1990) ........................................................ 10

Columbia Pictures Film Prod. Asia Ltd. v. Uth,
   2007 WL 36283 (E.D. Cal. Jan. 4, 2007) ....................................... 5

Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham,
   Inc., 259 F.3d 1186 (9th Cir. 2001) ............................................... 10

Derek Andrew, Inc. v. Poof Apparel Corp.,
   528 F.3d 696 (9th Cir. 2008) .......................................................... 11

E-Hose Techs., LLC v. Primeco Wholesale, Inc.,
   2015 WL 4638474 (C.D. Cal. Aug. 3, 2015) .................................. 5

eBay, Inc. v. MercExchange,
   LLC, 547 U.S. 388 (2006) .............................................................. 13

Eitel v. McCool,
   782 F.2d 1470 (9th Cir. 1986) ....................................................... 8, 9

Fogerty v. Fantasy, Inc.,
   510 U.S. 517 (1994) ....................................................................... 15

Hand & Nail Harmony, Inc. v. Guangzhou Shan Yan Cosmetics Co.,
   Ltd.,2015 WL 4378197 (D. Nev. July 15, 2015) ............................ 14

Historical Research v. Cabral,
   80 F.3d 377 (9th Cir. 1996) ............................................................ 15

1
2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3
4

Island Software & Computer Serv., Inc. v. Microsoft Corp.,
    413 F.3d 257 (2d Cir. 2005) ........................................................... 10

5
6

Lectrodryer v. SeoulBank,
    77 Cal. App. 4th 723, 91 Cal. Rptr. 2d 881 (2000) ......................... 7

7
8

Microsoft Corp. v. AGA Solutions, Inc.,
    2009 WL 1033784 (E.D.N.Y. April 17, 2009) ................................. 6

9
10

Microsoft Corp. v. Compusource Distribs.,
    115 F. Supp. 2d 800 (E.D. Mich. 2000) .................................... 6, 15

11

Microsoft Corp. v. Image & Bus. Solutions, Inc.,
    2007 WL 2874430 (C.D. Cal. May 4, 2007)................................... 10

12
13

Microsoft Corp. v. McGee,
    490 F. Supp. 2d 874 (S.D. Ohio 2007).........................5, 6, 9, 12, 15

14
15

Microsoft Corp. v. Sellers,
    411 F. Supp. 2d 913 (E.D. Tenn. 2006) ................................5, 6, 12, 15

16
17

Microsoft Corp. v. Tierra Computer, Inc.,
    184 F. Supp. 2d 1329 (N.D. Ga. 2001) ........................................ 11

18
19

Mindys Cosmetics, Inc. v. Dakar,
    611 F.3d 590 (9th Cir. 2010) ......................................................... 7

20
21

Moroccanoil, Inc. v Allstate Beauty Prods., Inc.,
    847 F. Supp. 2d 1197 (C.D. Cal. 2012)........................................... 6

22

Nintendo of Am., Inc. v. Dragon Pacific Int'l,
    40 F.3d 1007 (9th Cir. 1994) ....................................................... 10

23
24

Oakdale Vill. Grp. v. Fong,
    43 Cal. App. 4th 539, 50 Cal. Rptr. 2d 810 (1996) ........................ 7

25
26

PepsiCo, Inc. v. Cal. Sec. Cans,
    238 F. Supp. 2d 1172 (C.D. Cal. 2002)......................................8, 9

27
28

PepsiCo, Inc. v. Triunfo-Mex, Inc.,
    189 F.R.D. 431 (C.D. Cal. 1999) ................................................... 8

**TABLE OF AUTHORITIES**
(continued)

Page

PetMed Express, Inc. v. MedPets.com, Inc.,
  336 F. Supp. 2d 1213 (S.D. Fla. 2004)............................................................. 9, 10

Philip Morris USA Inc. v. Castworld Prods., Inc.,
  219 F.R.D. 494 (C.D. Cal. 2003) ............................................................... 8, 9, 11

Playboy Enters., Inc. v. Baccarat Clothing Co.,
  692 F.2d 1272 (9th Cir. 1982) ............................................................................ 16

Polo Fashions, Inc. v. Dick Bruhn, Inc.,
  793 F.2d 1132 (9th Cir. 1986) ............................................................................ 14

Reno Air Racing Ass'n, Inc. v. McCord,
  452 F.3d 1126 (9th Cir. 2006) ............................................................................ 13

Rio Properties, Inc. v. Rio Int'l Interlink,
  284 F. 3d 1007 (9th Cir. 2002) ........................................................................... 16

Sara Lee Corp. v. Bags of N.Y., Inc.,
  36 F. Supp. 2d 161 (S.D.N.Y. 1999) ................................................................... 10

Sennheiser Elec. Corp. v. Eichler,
  2013 WL 3811775 (C.D. Cal. July 19, 2013) ..................................................... 14

TeleVideo Sys., Inc. v. Heidenthal,
  826 F.2d 915 (9th Cir. 1987) ................................................................................ 5

Tiffany Inc. v. Luban,
  282 F. Supp. 2d 123 (S.D.N.Y. 2003) ................................................... 9, 10, 11, 12

Walter v. Mattel, Inc.,
  210 F.3d 1108 (9th Cir. 2000) .............................................................................. 6

Wecosign, Inc. v. IFG Holdings, Inc.,
  845 F. Supp. 2d 1072 (C.D. Cal. 2012) ..................................................... 14, 15, 16

**STATUTES**

15 U.S.C. § 1114.................................................................................................... 5

15 U.S.C. § 1116.................................................................................................. 13

**TABLE OF AUTHORITIES**
(continued)

Page

15 U.S.C. § 1117.................................................................................9, 10, 12, 15, 16

15 U.S.C. § 1125.................................................................................................... 6

17 U.S.C. § 501.......................................................................................................5

17 U.S.C. § 502.....................................................................................................13

17 U.S.C. § 504.................................................................................................9, 10

17 U.S.C. § 505.....................................................................................................15

18 U.S.C. § 2318............................................................................................6, 13, 16

**RULES**

Central District Local Rule 55..............................................................................4

Federal Rule of Civil Procedure 55 ...............................................................1, 4, 9

## I.  INTRODUCTION

Plaintiff Microsoft Corporation ("Microsoft") respectfully submits this Memorandum in support of its Motion for Default Judgment and Permanent Injunction against Defendant Mohsen Ravanbakhsh a/k/a Mohsen Ravan a/k/a Moshen Rawanbaks[1] ("Ravanbakhsh").  Microsoft filed this action after confirming that Ravanbakhsh willfully distributed counterfeit Microsoft software and illicit Certificates of Authenticity labels ("COAs" or "COA labels").  Ravanbakhsh was properly served with the Summons and Complaint, but failed to respond or otherwise defend the action.  Consequently, on April 29, 2015, the Clerk of this Court entered default against Ravanbakhsh based upon his failure to respond to Microsoft's Complaint for (1) Copyright Infringement; (2) Federal Trademark Infringement; (3) False Designation of Origin, False Description and False Representation; (4) Violation of the Anti-Counterfeiting Amendments Act of 2004; (5) Common Law Unfair Competition; (6) Conversion; (7) Unjust Enrichment; (8) Imposition of a Construction Trust; and (9) Accounting.  Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, Microsoft now seeks a default judgment, an award of statutory damages, attorneys' fees and costs authorized by statute, and a permanent injunction to prevent future infringement by Ravanbakhsh of Microsoft's copyrights and trademarks and to prevent future distribution of illicit COA labels.

## II.  BACKGROUND

On December 18, 2014, Microsoft filed this action against Ravanbakhsh, among others, to recover damages arising from Ravanbakhsh's distribution of counterfeit and infringing Microsoft software and illicit COA labels.  Microsoft develops, markets, distributes, and licenses computer software.  [Compl. (Dkt. No.

---

[1] Microsoft is concurrently filing a Request to Amend Its Complaint to Conform to Evidence to add an additional a/k/a for Ravanbakhsh.

1) ¶ 1.]  Microsoft has developed several computer software programs, including but not limited to Microsoft Windows XP and Windows 7.  [Compl. ¶¶ 30-31.] Microsoft's software programs are packaged and distributed together with associated proprietary materials, such as user's guides, manuals, end-user license agreements, COA labels, product keys and other components.  [Compl. ¶ 29.] Microsoft holds valid copyrights in its software programs that are duly and properly registered with the United States Copyright Office.  [Compl. ¶¶ 30-31 & Exs. 1 and 2.]  Microsoft also has duly and properly registered a number of trademarks and a service mark in the United States Patent and Trademark Office.  [Compl. ¶ 35 & Exs. 14-17.]

Ravanbakhsh is in the business of advertising, marketing, and distributing computer software and associated components, including software covered by Microsoft's registered copyrights and bearing Microsoft's registered trademarks or imitations thereof.  [Compl. ¶ 25.]  Ravanbakhsh was, at least up to and including 2012, part of a large-scale counterfeiting operation run by the non-defaulting defendants Buy More, Inc., Laptop Outlet Center, Inc., Maryam Sajjad, Mojdeh Alam, Vehid Abdullahi and Shahram Shirazi (the "non-defaulting defendants"). [See Compl. ¶¶ 2-25.]  For example, Ravanbakhsh was associated with an entity called Mission Softs which is a d/b/a of Defendant Alam.  [See Compl. ¶¶ 17-19.] Mission Softs distributed numerous counterfeit copies of Windows 7 along with adulterated and illicit COA labels.  [See Compl. ¶¶ 59-66.]

It is unclear when, if ever, Ravanbakhsh and the non-defaulting defendants stopped working together.  For purposes of this Motion, however, it does not matter, as Microsoft has evidence of multiple counterfeit distributions that trace directly to Ravanbakhsh.  During discovery in the case against the non-defaulting defendants, which included subpoenaing from PayPal, Inc. transaction records related to all of the defendants, Microsoft discovered a number of PayPal accounts and websites associated with Ravanbakhsh, including ztek.net, trustsofts.net and

1  Tech Supply LLC.  [Declaration of Sharon Grisham ("Grisham Dec."), ¶3 and Exs.

2  A and B.]  Ravanbakhsh's PayPal accounts show numerous distributions of

3  purported Microsoft software not identified in the Complaint, including:  (1) two

4  confirmed distributions of counterfeit Windows XP software and illicit COAs

5  through the ztek.net website; and (2) one confirmed counterfeit distribution of

6  Windows 7 software through an eBay auction after the Complaint was filed and

7  served on Ravanbakhsh.

8        Specifically, in June 2012 and September 2012, two of Ravanbakhsh's

9  customers sent in purported Windows XP software components to Microsoft for

10  analysis.  The software components were determined to be counterfeit Windows XP

11  software discs and illicit Windows XP COA labels.  [Declaration of Cindy Yard

12  ("Yard Dec."), ¶¶ 4-11 & Exs. A-B.]  Both of the customer purchases were made

13  through the ztek.net website and the payments went directly into Ravanbakhsh's

14  PayPal account.  [Yard Dec., Ex. A, pp. 6-7 and Ex. B, pp. 11-12; Grisham Dec., ¶5

15  and Ex. C.]

16        Even more egregiously, after the filing and service of the Complaint in this

17  action, Ravanbakhsh continued to distribute counterfeit Microsoft software.  [See

18  Declaration of Katie Hasbrouck ("Hasbrouck Dec."), ¶¶2-3 and Ex. A; Declaration

19  of Michael Fuller ("Fuller Dec."), ¶¶2-7 and Exs. A-F.]  After receiving reports of

20  possible infringement, on February 26, 2015, an investigator purchased purported

21  Microsoft Windows 7 software from an entity called Tech Supply LLC on eBay.

22  [Fuller Dec., ¶¶2-4 and Exs. A-D.]  The payment the investigator made for that

23  purchase was deposited into a PayPal account under the name of "Moshen

24  Rawanbaks."  [Grisham Dec., ¶5, Ex. D.]  The social security number on the

25  "Moshen Rawanbaks." account is the same as Ravanbakhsh's other PayPal account

26  and the addresses linked to the PayPal account are addresses known to be

27  associated with Ravanbakhsh, as well as the non-defaulting defendants.  [Grisham

28

1   Dec., ¶4 and Exs. A and B.]  The software components received by the investigator
2   were analyzed and determined to be counterfeit.  [Hasbrouck Dec., ¶¶2-3.]

3          As noted above, on December 18, 2014, Microsoft filed its Complaint against
4   Ravanbakhsh, requesting damages, the entry of a permanent injunction, and
5   attorneys' fees and costs.  Ravanbakhsh was served by substitute service with the
6   Summons and Complaint on December 30, 2014 and the Proof of Service was filed
7   with the Court on January 29, 2015.  [Dkt. No. 25.]  The parties stipulated to an
8   extension of time, until February 19, 2015, for Ravanbakhsh to respond to the
9   Complaint.  [Dkt. No. 26.]  The parties sought a second extension of time which
10  was denied.  [Dkt. Nos. 29-30.]  To date, Ravanbakhsh has not pled in response to
11  or otherwise defended against the Complaint, despite the passage of the response
12  date.  Thus, upon request from Microsoft, the Court Clerk entered default against
13  Ravanbakhsh on April 29, 2015.  [Dkt. No. 52.]

14         Pursuant to Rule 55 of the Federal Rules of Civil Procedure, Microsoft
15  respectfully requests that the Court enter a default judgment against Ravanbakhsh,
16  award Microsoft statutory damages in the amount of $910,000, award Microsoft
17  attorneys' fees and costs per local Rule 55-3 in the amount of $21,800, and issue a
18  permanent injunction to prevent future infringement.

19  **III.   ARGUMENT**

20         Rule 55(a) of the Federal Rules of Civil Procedure states that "[w]hen a party
21  against whom a judgment for affirmative relief is sought has failed to plead or
22  otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must
23  enter the party's default."  Here, the Clerk has already defaulted Ravanbakhsh.  By
24  this Motion, Microsoft applies for a default judgment against Ravanbakhsh.  See
25  Fed. R. Civ. P. 55(b).  The factual allegations in the Complaint now deemed
26  admitted together with the Declarations of Katie Hasbrouck, Cindy Yard, Sharon
27  Grisham, Michael Fuller, and Katherine Dugdale establish that the requested

28

default judgment, which includes statutory damages and attorneys' fees and costs, is warranted.

### A.   Ravanbakhsh Is Liable on All Claims[2]

After a defendant's default is entered by the Clerk, the well-pleaded factual allegations of the complaint are taken as true.  TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987); E-Hose Techs., LLC v. Primeco Wholesale, Inc., 2015 WL 4638474, at *1 (C.D. Cal. Aug. 3, 2015).  Where the well-pleaded factual allegations provide a sufficient legal basis for entry of a default judgment on liability, the court then conducts an inquiry to ascertain the amount of damages. See E-Hose Techs., 2015 WL 4638474, at *2; see also Columbia Pictures Film Prod. Asia Ltd. v. Uth, 2007 WL 36283, at *2 (E.D. Cal. Jan. 4, 2007).

### 1.   Copyright and Trademark Infringement

The facts alleged in Microsoft's Complaint, now deemed true, as well as the counterfeit and illicit distributions discussed in Section II above, establish Microsoft's claims of copyright infringement and trademark infringement. Specifically, Ravanbakhsh distributed counterfeit and infringing Microsoft software as well as illicit COAs.  Thus, Ravanbakhsh willfully infringed Microsoft's copyrights and trademarks pursuant to 17 U.S.C. § 501, et seq. and 15 U.S.C. § 1114.  See Microsoft Corp. v. McGee, 490 F. Supp. 2d 874, 878-80 (S.D. Ohio 2007) (defendant defaulted, so court looked to factual allegations in complaint and found that defendant was warned about infringement, subsequently repeated the infringing act, and thus willfully violated Copyright Act and Lanham Act); Microsoft Corp. v. Sellers, 411 F. Supp. 2d 913, 918-19 (E.D. Tenn. 2006) (distribution of unauthorized and infringing copies of Microsoft software constituted violations of the Copyright Act and Lanham Act).  Ravanbakhsh is liable for violations of the Copyright Act and Lanham Act.

---

[2] Microsoft will not pursue its claims for imposition of a constructive trust and an accounting.

### 2.    Violations of the Anti-Counterfeiting Amendments Act of 2004

Ravanbakhsh also violated the Anti-Counterfeiting Amendments Act of 2004, 18 U.S.C. § 2318.  The two customer submissions containing illicit COA labels and the allegations in the Complaint establish his liability for violations of the Anti-Counterfeiting Amendments Act of 2004.  See Microsoft Corp. v. AGA Solutions, Inc., 2009 WL 1033784, at *3 (E.D.N.Y. April 17, 2009) (holding defendant liable for violation of the Anti-Counterfeiting Amendments Act of 2004 where defendant was aware of the facts constituting the offense and trafficked in counterfeit COAs).

### 3.    False Designation of Origin

Ravanbakhsh's distributions further constitute false designation of origin, false description, and false representation that the infringing Microsoft software distributed by Ravanbakhsh was sponsored, approved, or authorized by Microsoft, in violation of 15 U.S.C. § 1125(a).  See McGee, 490 F. Supp. 2d at 879-80 (distributing unauthorized and infringing copies of Microsoft software established a violation for false designation of the origin of the software pursuant to § 1125(a)); Sellers, 411 F. Supp. 2d at 919 (same); see also Microsoft Corp. v. Compusource Distribs., 115 F. Supp. 2d 800, 807 (E.D. Mich. 2000) (same).

### 4.    Common Law Unfair Competition

Ravanbakhsh's distribution of infringing Microsoft software gives rise to an action for unfair competition pursuant to the common law of California.  "The test for false designation under the Lanham Act, as well as the common-law . . . unfair competition claims, is whether there was a 'likelihood of confusion.'"  Walter v. Mattel, Inc., 210 F.3d 1108, 1111 (9th Cir. 2000); see also Moroccanoil, Inc. v Allstate Beauty Prods., Inc., 847 F. Supp. 2d 1197, 1201 n.1 (C.D. Cal. 2012) (finding state law claim for unfair competition is "substantially congruent to claims made under the Lanham Act and thus also require[s] a showing of likelihood of

confusion").  As discussed above, Ravanbakhsh distributed counterfeit and infringing software, attempting to pass it off as genuine, authorized Microsoft software.  Therefore, Ravanbakhsh is liable for common law unfair competition.

### 5.    Conversion

Ravanbakhsh's misappropriation of Microsoft's intellectual property makes him liable for conversion.  "'Conversion is the wrongful exercise of dominion over the property of another.'"  <u>Mindys Cosmetics, Inc. v. Dakar</u>, 611 F.3d 590, 601 (9th Cir. 2010) (quoting <u>Oakdale Vill. Grp. v. Fong</u>, 43 Cal. App. 4th 539, 543, 50 Cal. Rptr. 2d 810, 812 (1996)).  "The elements of a conversion  claim are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."  <u>Id.</u>  Here, Ravanbakhsh misrepresented to unsuspecting consumers that he was selling genuine Microsoft software and components.  Instead he distributed counterfeit software and components bearing counterfeit copies of Microsoft's trademarks.  As a result of Ravanbakhsh's conduct, Microsoft has been damaged, including the loss of good will through the dissemination of counterfeit software.  [<u>See</u> Compl. ¶ 131.]

### 6.    Unjust Enrichment

Finally, Ravanbakhsh is liable on a theory of unjust enrichment.  "The elements of unjust enrichment are 'receipt of a benefit and unjust retention of the benefit at the expense of another.'"  <u>Berger v. Home Depot USA, Inc.</u>, 741 F.3d 1061, 1070 (9th Cir. 2014) (quoting <u>Lectrodryer v. SeoulBank</u>, 77 Cal. App. 4th 723, 726, 91 Cal. Rptr. 2d 881, 883 (2000)).  As discussed above, Ravanbakhsh distributed counterfeit Microsoft software accompanied by illicit COAs to unsuspecting members of the public as genuine Microsoft software.  [Compl. ¶ 133.]  Ravanbakhsh has been unjustly enriched through his sale of these items. [Compl. ¶ 134.]

Default having been established, and the factual allegations in the Complaint deemed true, this Court should enter default judgment against Ravanbakhsh as outlined on the claims above.[3]

**B.    The <u>Eitel</u> Factors Strongly Favor Entry of Default Judgment**

Courts consider the following factors when deciding whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

<u>Eitel</u> v. <u>McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  "In applying this discretionary standard, default judgments are more often granted than denied." <u>PepsiCo, Inc.</u> v. <u>Triunfo-Mex, Inc.</u>, 189 F.R.D. 431, 432 (C.D. Cal. 1999)

In this case, the enumerated factors weigh heavily in favor of granting default judgment.  Microsoft would unquestionably suffer prejudice if the default judgment is not entered because Microsoft would be without any other recourse for recovery. <u>See</u> <u>PepsiCo, Inc.</u> v. <u>Cal. Sec. Cans</u>, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (noting that "[p]otential prejudice to [plaintiff] favors granting a default judgment. If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").  Moreover, Microsoft's Complaint properly alleged the necessary elements for each cause of action and Microsoft supplemented the allegations with declarations establishing Ravanbakhsh's liability on Microsoft's claims.  This satisfies <u>Eitel</u> factors two and three, which simply "require that a plaintiff state a claim on which [] [it] may recover."  <u>Id.</u> at 1175; <u>see</u> <u>also</u> <u>Philip Morris USA Inc.</u> v. <u>Castworld Prods., Inc.</u>, 219 F.R.D. 494, 499 (C.D.

---

[3] Microsoft will only seek statutory damages against Ravanbakhsh.  It will not separately seek damages for its claims for common law unfair competition, conversion or unjust enrichment.

Cal. 2003).  As for the fourth <u>Eitel</u> factor, Microsoft seeks only statutory damages, which it is entitled to under federal law.  Furthermore, there is virtually no possibility of a dispute as to any material fact.  <u>Id.</u> at 500.  And, given the passage of time since the filing and service of the Complaint, there is no excusable neglect.  <u>See id.</u> at 500-01.  As for the final <u>Eitel</u> factor, Ravanbakhsh's failure to answer Microsoft's Complaint makes a resolution on the merits impossible.  <u>See</u> <u>Cal. Sec. Cans</u>, 238 F. Supp. 2d at 1177 ("Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action.").

### C.   Microsoft Is Entitled to Statutory Damages

Unable to seek actual damages due to Ravanbakhsh's failure to participate in this action, Microsoft is left with no choice but to seek statutory damages.  "[S]tatutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed."  <u>McGee</u>, 490 F. Supp. 2d at 882; <u>see also</u> <u>PetMed Express, Inc. v. MedPets.com, Inc.</u>, 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004); <u>Tiffany Inc. v. Luban</u>, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).  Because Ravanbakhsh failed to file an answer and refused to defend, Microsoft could not conduct formal discovery.  Thus, it is particularly appropriate for the Court to award Microsoft statutory damages.

### 1.   The Copyright and Lanham Acts Provide for Statutory Damages

The Copyright and Lanham Acts allow a successful plaintiff to elect to recover an award of specified statutory damages in lieu of actual damages.  <u>See</u> 15 U.S.C. § 1117(c); 17 U.S.C. § 504(c).  The statutory damage provision for trademark infringement, Section 1117(c), was added for the very reason that "counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept . . ., making proving actual damages in these cases extremely difficult if not

impossible." Tiffany, 282 F. Supp. 2d at 124 (citing S. Rep. No. 177, at 10 (1995)); see also Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc., 259 F.3d 1186, 1194 (9th Cir. 2001) (holding that "[a] plaintiff may elect statutory damages regardless of the adequacy of the evidence offered as to his actual damages and the amount of the defendant's profits"); Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 850 (11th Cir. 1990) ("Generally, statutory damages are awarded when no actual damages are proven, or actual damages and profits are difficult or impossible to calculate."). Statutory damages are especially fitting in default judgment cases due to infringer nondisclosure. See Sara Lee Corp. v. Bags of N.Y., Inc., 36 F. Supp. 2d 161, 165-66 (S.D.N.Y. 1999); see also PetMed Express, Inc., 336 F. Supp. 2d at 1220; Tiffany, 282 F. Supp. 2d 124.

The Copyright Act authorizes statutory damages of up to $30,000 per copyright infringement or enhanced damages up to $150,000 per copyright if the infringement is willful. 17 U.S.C. § 504(c). In cases involving use of a counterfeit mark, a trademark owner may elect, at any time before final judgment to recover an award of statutory damages of up to $200,000 per trademark infringed, enhanced up to $2,000,000 per mark if the infringement is willful. See 15 U.S.C. § 1117(c). If, as Microsoft has done here, statutory damages are elected, courts have wide discretion to determine the amount of statutory damages to be awarded. Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 265 (2d Cir. 2005) (stating a district court has wide discretion in setting the statutory damage award for nonwillful infringement); Microsoft Corp. v. Image & Bus. Solutions, Inc., 2007 WL 2874430, at *7 (C.D. Cal. May 4, 2007) ("the court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima.").

A separate award of statutory damages under both the Lanham Act and the Copyright Act are allowed, even when a defendant's infringement was caused by a single act. See Nintendo of Am., Inc. v. Dragon Pacific Int'l, 40 F.3d 1007, 1011

1   (9th Cir. 1994) (holding that a defendant commits "two wrongs" when his actions

2   violate both the Copyright Act and the Lanham Act and to "effectuate the purposes

3   of both statutes, damages may be awarded under both").  For example, in Microsoft

4   Corp. v. Tierra Computer, Inc., 184 F. Supp. 2d 1329, 1331 (N.D. Ga. 2001), the

5   Court explained:

6

7
        Defendants did not commit only one wrongful act.  Had
        Defendants sold Plaintiff's computer programs without
        representing that they were Microsoft products,

8
        Defendants would have committed only copyright
        infringement.  If Defendants had represented that the

9
        computer programs were Microsoft's, when in fact they
        were not, then Defendants violated the Lanham Act.

10
        While there was only one act, there were two wrongs.

11   Ravanbakhsh's conduct violated both the Copyright Act and Lanham Act.

12   Microsoft exercises its right to elect statutory damages under both statutes.

13
        **2.**      **Microsoft Seeks an Amount of Statutory Damages Within the Range Available for Non-Willful Infringement**

14   Willfulness can be inferred from a defendant's failure to defend.  Castworld

15   Prods., Inc., 219 F.R.D. at 500 (finding that defendant willfully infringed plaintiff's

16   trademark based on plaintiff's allegations of willful infringement and defendant's

17   "failure to comply with the judicial process or to participate in any way in the

18   present litigation"); see also Arista Records, Inc. v. Beker Enters., Inc., 298 F.

19   Supp. 2d 1310, 1313 (S.D. Fla. 2003) (the court may infer willful infringement

20   because of default); Tiffany, 282 F. Supp. 2d at 124 (finding that "[b]y virtue of the

21   default, the [defaulting party's] infringement is deemed willful").  Moreover, the

22   allegations of Microsoft's Complaint, which are now deemed admitted, assert that

23   Ravanbakhsh's infringement was willful.  [Compl. ¶¶ 77, 82, 94, 96.]  Under the

24   circumstances of this case, it is appropriate for the Court to find that Ravanbakhsh's

25   infringement was willful.  See Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d

26   696, 702 (9th Cir. 2008) (holding that on default, "all factual allegations in the

27   complaint are deemed true, including the allegation of [defendant's] willful

28   infringement of [plaintiff's] trademarks.").

1      To sanction Ravanbakhsh for willful infringement, and to deter Ravanbakhsh

2   and others from future infringing behavior, Microsoft is entitled to seek statutory

3   damages of up to $150,000 for each copyright willfully infringed, and up to

4   $2,000,000 for each trademark willfully infringed.  However, Microsoft only

5   requests statutory damages in the non-willful range for trademark infringement and

6   copyright infringement.  Specifically, Microsoft seeks statutory damages of

7   $200,000 for the four trademarks at issue and $30,000 for the two copyrights at

8   issue, for a total of $860,000.[4]  This award of statutory damages is appropriate in

9   this case because Ravanbakhsh failed to appear and defend this action and

10  distributed counterfeit software even after the filing of the complaint.

11     The damages award sought by Microsoft is within the range of awards for

12  damages in factually similar cases.  See, e.g., McGee, 490 F. Supp. 2d at 882 (after

13  default, awarding statutory damages of $100,000 per trademark at issue and

14  $30,000 per copyright at issue, for a total of $710,000);[5] Sellers, 411 F. Supp. 2d at

15  921-22 (on summary judgment awarding maximum statutory damages for non-

16  willful infringement); Arista Records, Inc., 298 F. Supp. 2d at 1314 (after default,

17  awarding statutory damages of $1,890,000); Tiffany, 282 F. Supp. 2d at 125

18  (awarding $550,000 in statutory damages after default).  As these cases illustrate,

19  the amount of statutory damages requested by Microsoft is appropriate.  Thus, the

20  Court should enter default judgment in favor of Microsoft and against Ravanbakhsh

21  in the amount of $860,000.

22

23

24  [4]  In this action, the four trademarks at issue are:  (1) 1,200,236 ("MICROSOFT");
    (2) 1,872,264 ("WINDOWS"); (3) 2,744,843 (COLORED FLAG DESIGN); and
25  (4) 3,361,017 (COLORED FLAG START BUTTON).  For purposes of calculating
    statutory damages Microsoft seeks damages "per counterfeit mark."  See 15 U.S.C.
26  § 1117(c).
    [5]  At the time of the McGee decision, the maximum amount of statutory damages
27  for non-willful infringement under the Lanham Act was $100,000.
28

### 3.   The Anti-Counterfeiting Amendments Act of 2004 Provides for Statutory Damages

Under the Anti-Counterfeiting Amendments Act, Microsoft may elect to recover statutory damages of not less than $2,500 and up to $25,000 for each counterfeit or illicit Certificate of Authenticity distributed by Ravanbakhsh.  See 18 U.S.C. § 2318(e)(4).  Microsoft elects to recover statutory damages pursuant to the Act.  Ravanbakhsh knew that he was distributing counterfeit and/or illicit COA labels.  [Compl. ¶ 109.]  Due to Ravanbakhsh's default and consequent failure to participate in discovery, Microsoft cannot precisely quantify the extent of Ravanbakhsh's bad acts.  Therefore, Microsoft requests statutory damages of $50,000 based on the samples of illicit COA labels submitted by Ravanbakhsh's customers.

### D.   This Court Should Permanently Enjoin Ravanbakhsh

In addition to statutory damages, Microsoft is also entitled to a permanent injunction to prevent Ravanbakhsh from engaging in any future infringement of Microsoft's copyrights and trademarks.  The Copyright Act permits a court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a); see eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006).  The Lanham Act also allows issuance of a permanent injunction to prevent any future violation of Microsoft's trademarks.  15 U.S.C. § 1116(a); see Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1137-38 (9th Cir. 2006).[6]  Specifically, courts examine whether (1) the plaintiff has suffered irreparable injury; (2) there is an adequate remedy at law for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) it is in the public's interest to issue the injunction.  eBay, 547 U.S. at 391.

---

[6] The issuance of a permanent injunction is also warranted under the Anti-Counterfeiting Amendments Act of 2004.  18 U.S.C. § 2318(e)(2)(A).

1        With regard to the first and second factors, Ravanbakhsh advertised

2    worldwide via the Internet that he was selling genuine Microsoft software and then,

3    instead, distributed counterfeit copies of Microsoft software.  Microsoft cannot

4    repair the harm that Ravanbakhsh caused because Ravanbakhsh chose not to

5    participate in this lawsuit and thus Microsoft cannot know the full extent of

6    Ravanbakhsh's infringement.  Microsoft is unable to reach out to all customers who

7    had bad experiences with their pirated software, and thus, the resulting damage to

8    Microsoft's goodwill is an irreparable injury for which it has no adequate legal

9    remedy.  See Sennheiser Elec. Corp. v. Eichler, 2013 WL 3811775, at *10 (C.D.

10   Cal. July 19, 2013) (finding that "the injury caused by the presence of infringing

11   products in the market—such as lost profits and customers, as well as damage to

12   goodwill and business reputation—will often constitute irreparable injury" for

13   purposes of a permanent injunction).  Moreover, without an injunction

14   Ravanbakhsh will likely continue to infringe.  See Hand & Nail Harmony, Inc. v.

15   Guangzhou Shan Yan Cosmetics Co., Ltd., 2015 WL 4378197, at *5 (D. Nev. July

16   15, 2015).

17        The balance of hardships weighs in favor of granting an injunction.  The

18   requested injunction would not prohibit Ravanbakhsh from legally distributing

19   genuine Microsoft software.  Ravanbakhsh would only be prohibited from

20   infringing on Microsoft's copyrights and trademarks in the future.  Polo Fashions,

21   Inc. v. Dick Bruhn, Inc., 793 F.2d 1132, 1135-36 (9th Cir. 1986) (stating that "[i]f

22   the defendants sincerely intend not to infringe, the injunction harms them little; if

23   they do, it gives [the plaintiff] substantial protection of its trademark"); Wecosign,

24   Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012) ("the

25   balance of hardships favors Plaintiff because without an injunction, Plaintiff will

26   lose profits and goodwill, while an injunction will only proscribe Defendants'

27   infringing activities.").

28

Finally, the public interest would be served by granting an injunction, as it would prevent consumers from unknowingly receiving infringing Microsoft software from Ravanbakhsh.  Id. (finding that "an injunction is in the public interest because the public has an interest in avoiding confusion between two companies' products"); AT&T Corp. v. Vision One Security Sys., 1995 WL 476251, at * 7 (S.D. Cal. July 27, 1995) (finding "[w]here defendant's concurrent use of plaintiff's trademark without authorization is likely to cause confusion, the public interest is damaged by the defendant's use.").

Accordingly, Microsoft asks the Court to enter the accompanying proposed permanent injunction to prevent any future infringement of Microsoft's trademarks and copyrights.

**E.     Microsoft Is Entitled to an Award of Attorneys' Fees and Costs**

Both the Copyright Act and the Lanham Act authorize this Court to award Microsoft its reasonable costs and attorneys' fees.  17 U.S.C. § 505; 15 U.S.C. § 1117(a).  In cases against infringers of Microsoft software, courts have consistently awarded attorneys' fees and costs.  See McGee, 490 F. Supp. 2d at 883; Sellers, 411 F. Supp. 2d at 922; Compusource Distrib., 115 F. Supp. 2d at 812. Such an award is warranted under the circumstances of this case.

Under the Copyright Act, a court may "freely award fees" to the prevailing party as long as it "seek[s] to promote the Copyright Act's objectives."  Historical Research v. Cabral, 80 F.3d 377, 378-79 (9th Cir. 1996) (citing Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994)).  In Fogerty, the Supreme Court approved several nonexclusive factors for courts to consider, such as "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  510 U.S. at 534 n.19.  Here, where Ravanbakhsh was part of a large-scale counterfeiting scheme, fees are warranted.  An award of fees here would certainly further the purposes of the Copyright Act by, among other

1   things, encouraging plaintiffs to act to protect their copyrights and deterring future

2   infringers.

3     The Lanham Act authorizes an award of reasonable attorneys' fees to the

4   prevailing party in "exceptional cases."  15 U.S.C. § 1117(a).  The Ninth Circuit

5   has held that "[w]hile the term 'exceptional' is not defined in the statute, attorneys'

6   fees are available in infringement cases where the acts of infringement can be

7   characterized as malicious, fraudulent, deliberate, or willful."  Rio Properties, Inc.

8   v. Rio Int'l Interlink, 284 F. 3d 1007, 1023 (9th Cir. 2002) (citing Playboy Enters.,

9   Inc. v. Baccarat Clothing Co., 692 F.2d 1272, 1276 (9th Cir. 1982)).

10   Ravanbakhsh's willfulness, as discussed above, is indisputable since Ravanbakhsh

11   defaulted and consequently admitted to the willful conduct set forth in the

12   Complaint.  See Wecosign, 845 F. Supp. 2d at 1086 (noting that in the context of a

13   default judgment, the Ninth Circuit has upheld awards of attorneys' fees solely

14   because, by entry of default judgment, the district court determines as alleged in

15   plaintiff's complaint that the defendant's acts were willful and deliberate).

16   Moreover, "a case may be deemed 'exceptional,' and merit an award of attorneys'

17   fees under the Lanham Act, when Defendant disregards the proceedings and does

18   not appear."  Castworld Prods., Inc., 219 F.R.D. at 502.

19     Finally, the Anti-Counterfeiting Amendments Act authorize this Court to

20   issue an order that Microsoft is entitled to recover its reasonable costs and

21   attorneys' fees.  See 18 U.S.C. § 2318(e)(2)(C).

22     As demonstrated above and set forth in the Complaint, Ravanbakhsh

23   willfully infringed Microsoft's copyrights and trademarks and violated the Anti-

24   Counterfeiting Amendments Act of 2004, entitling Microsoft to its attorneys' fees

25   and costs.  Using the table found in Local Rule 55-3 along with the amount of

26   statutory damages sought by Microsoft ($910,000), Microsoft seeks fees in the

27   amount of $21,800.

28

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff Microsoft Corporation respectfully requests that the Court grant its motion for entry of default judgment in its favor against Ravanbakhsh and award the following in damages (1) statutory damages of $800,000 pursuant to the Lanham Act; (2) statutory damages of $60,000 pursuant to the Copyright Act; and (3) statutory damages of $50,000 pursuant to the Anti-Counterfeiting Amendments Act of 2004 for a total of $910,000; award attorneys' fees and costs in the amount of $21,800; and enter a permanent injunction against Ravanbakhsh in the form provided.

DATED:  October 15, 2015

**PERKINS COIE** LLP

By:/s/ Katherine M. Dugdale
Katherine M. Dugdale

Attorneys for Plaintiff
MICROSOFT CORPORATION